UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD JOHNSTON,<br><br>    Plaintiff<br><br>v.<br><br>DR. MARTIN NAUGHTON,<br><br>    Defendant | Case No.: 3:22-cv-00080-MMD-CSD<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 5 |

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Motion for Preliminary Injunction. (ECF No. 5.) Defendant Dr. Naughton filed a response. (ECF Nos. 14, 17.) Plaintiff filed a reply. (ECF No. 22.)

After a thorough review, it is recommended that Plaintiff's motion be denied.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 8.) The court screened Plaintiff's complaint and allowed him to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim against defendant Dr. Martin Naughton. (ECF No. 7.) Plaintiff alleges that he has deteriorated and deteriorating discs in his upper and lower back, and he has repeatedly told Dr. Naughton about his extremely painful back. Plaintiff claims that Dr. Naughton has refused to provide Plaintiff surgery, an approved back stimulator, as well as appropriate pain management. As a result, Plaintiff continues to suffer in pain and alleges he has suffered permanent spinal cord damage and permanent neuropathy.

Plaintiff moves for a preliminary injunction and seeks an order that he receive immediate, proper medical care, including back surgery, the placement of a spinal stimulator, and adequate pain management.

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Injunctions and temporary restraining orders are governed procedurally by Federal Rule of Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).).

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, the PLRA limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

### III. DISCUSSION

To demonstrate a likelihood of success on the merits, Plaintiff must show Dr. Naughton was deliberately indifferent to his serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Dr. Naughton does not dispute that Plaintiff's back pain constitutes a serious medical need. Therefore, the court's inquiry will focus on the subjective deliberate indifference prong of

the Eighth Amendment analysis. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *Stewart v. Aranas,* 32 F.4th 1192, 1195(9th Cir. 2022) (citing *Shapley v. Nev. Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985)); *McGuckin*, 974 F.2d at 1060.

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989)), *overruled on other grounds in Peralta v. Dillard,* 744 F.3d 1076 (9th Cir. 2014). Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must

show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Plaintiff had lumbar spinal surgery performed by Dr. Vacca of Sierra Neurosurgery Group on February 28, 2019 which included: bilateral L2-3, L3-4, L4-5 partial laminectomies, medial facetectomies, foraminotomies for extensive decompression of his thecal sac, bilateral L3, L4, and L5 nerve roots, and a L4-5 fusion. Prior to the surgery, Dr. Vacca told Plaintiff that the chronic dysesthesias he had experienced in his feet were probably not going to get better. (ECF No. 17-1 at 28.)

Plaintiff saw Dr. Vacca postoperatively on March 29, 2019. The chronic numbness in his feet was the same. He was not complaining much in the way of radicular pain. His recent x-rays looked great. Plaintiff was advised he could slowly progress with activities as tolerated, and would follow up in three months. (*Id*. at 24-25.)

On September 1, 2020, Dr. Timothy J. Doyle performed an EMG/nerve conduction study which was abnormal, and supported a diagnosis of sensorimotor axonal polyneuropathy. (ECF No. 17-1 at 22-23.)

Plaintiff saw Dr. Vacca again on September 14, 2020. Though there is not a medical record before the court of this visit, Dr. Vacca states that he last saw Plaintiff in November of 2019. At that time, he still had back pain and burning dysesthesias in his feet. Dr. Vacca ordered a repeat MRI and EMG study. The MRI showed postsurgical changes, but no areas of dramatic stenosis or any evidence of instability for which Dr. Vacca believed additional lumbar surgery would be of any benefit. The EMG did show peripheral polyneuropathy. Plaintiff was on Lyrica

at 75 mg twice a day, which was not helping much. Dr. Vacca recommended a referral to neurology for a neuropathy workup and possible consideration of change of his medications. Dr. Vacca said that an option for Plaintiff was a spinal cord stimulator for management of his symptoms of back pain and neuropathy. The doctor recommended a 3- to 5-day trial to see if it is symptomatically helpful, and then permanent implantation could be done. The trial would be performed by Dr. Blake in his office. (*Id*. at 20.)

There is a referral for Plaintiff regarding the temporary external spinal stimulator trial by Dr. Naughton dated October 8, 2020. The referral notice indicates that an appointment was scheduled for July 12, 2021, and then was rescheduled for October 5, 2021. However, it is unclear whether the delay in scheduling was due to something on the end of Dr. Naughton/NDOC or Sierra Neurosurgery. (*Id*. at 17.)

Plaintiff saw Dr. Blake at Sierra Neurosurgery on October 5, 2021. Plaintiff reported pain at the L5-S1 level that went down both legs. He was taking 225 mg of Lyrica every morning, which did help with the pain in his feet but did not last. Dr. Blake recommended trying a transforaminal steroid injection, and if that was unsuccessful, proceeding with the spinal cord stimulator trial. Dr. Blake said he was skeptical that another injection or spine surgery would help Plaintiff, and his "best bet" was the spinal cord stimulator device. Plaintiff did endorse improvements in his pain and function on his current pain regimen, and Dr. Blake recommended that Plaintiff's Lyrica dose be increased to 300 mg. The plan was to avoid prescribing opioid medications as Plaintiff was a high-risk for long-term opioid therapy. He was instructed to follow up after the injections. (*Id*. at 13-16.)

On December 8, 2021, Plaintiff was approved for a consultation with Dr. Steven Berman of Nevada Pain and Spine Specialists for a spinal cord stimulator trial.(*Id*. at 10-11.)

      Plaintiff saw Dr. Berman on March 15, 2022, who noted Plaintiff had undergone a neurological evaluation and was not considered a candidate for surgery. Dr. Berman agreed with Dr. Vacca's assessment that Plaintiff was a good candidate for a trial of spinal cord stimulation. Plaintiff was referred for a cognitive behavioral evaluation, and the spinal cord stimulation could be scheduled once that was completed. (*Id*. at 5-9.)

      Two days later, on March 17, 2022, APN Villegas requested scheduling of spinal cord stimulator trial implantation with Nevada Pain and Spine (Dr. Berman). (*Id*. at 2-3.)

      First, with respect to Plaintiff's request for placement of a spinal cord stimulator, it appears from Plaintiff's medical records that the spinal cord stimulator trial has been authorized, and Plaintiff was referred for a cognitive behavioral evaluation before the trial would be scheduled. Neither party comments on whether the cognitive behavioral evaluation has taken place or whether the spinal cord stimulator trial has been scheduled. Nevertheless, Plaintiff has in fact been authorized for the procedure.

      It is possible Plaintiff may have a claim regarding delay of the spinal cord stimulator trial, but at this point, the court cannot determine from this record that Dr. Naughton has been deliberately indifferent to Plaintiff's serious medical need in this regard or whether the delay was due to other circumstances. Plaintiff has not presented any evidence to substantiate his claim that the delay is attributable to Dr. Naughton, or that the delay has led to further injury. Plaintiff provides a conclusory statement that he has suffered in pain, but he does not provide medical records that demonstrate he complained to Dr. Naughton he has been in pain (such as a medical request/kite) and that Dr. Naughton ignored his complaints of pain.

      Second, insofar as Plaintiff requests that he be provided with further back surgery, none of the specialists Plaintiff has seen have recommended further surgery at this point. Dr. Vacca

7

said he did not believe further surgery would be of any benefit; Dr. Blake was skeptical that another injection or spine surgery would help Plaintiff; and Dr. Berman said Plaintiff was not considered a candidate for surgery. Instead, all of Plaintiff's specialists recommended Plaintiff proceed with the spinal cord stimulator trial. Insofar as Plaintiff disagrees with this course of treatment, he has not presented evidence that the recommendation of three specialists to first proceed with the spinal cord stimulator trial was medically unacceptable under the circumstance or was chosen in conscious disregard of an excessive risk to Plaintiff's health.

      Finally, Plaintiff requests that he be provided with adequate pain management. To support this request, Plaintiff merely provides a conclusory statement in his declaration that he has been denied proper pain management. Plaintiff does not describe what pain management he has received to date, why it is inadequate, or what further treatment he believes would be appropriate. On the other hand, Plaintiff's records indicate that he was receiving pain management from his specialists, including medication management. Plaintiff alleges in his complaint that he should be provided with opioid medications, but Dr. Blake indicated that Plaintiff was a high-risk candidate for treatment with opioid drugs. This is not evidence that *Dr. Naughton* denied Plaintiff treatment with opioids, but even if it was, this is a case of a difference of opinion, and Plaintiff has not submitted evidence to demonstrate this decision was medically unacceptable under the circumstances.

      In his reply, Plaintiff asserts that further surgery has been recommended. He attaches a partial record from October 16, 2019, from Nagy Aurangzeb, M.D., of Nevada Brain and Spine, who states that the regional surgeon made the correct decision in choosing to recommend laminectomy at L2, L3, and L4 with fusion at L4-5. (ECF No. 22 at 5.) This is a record that *precedes* Plaintiff's February 2019 surgery with Dr. Vacca and appears to state that Dr.

Aurangzeb agrees with the decision to move forward with the surgery that Dr. Vacca ultimately performed in February of 2019. This is not a recommendation for further surgical intervention.

Plaintiff must also demonstrate he will suffer irreparable harm in the absence of injunctive relief. However, to support his argument, Plaintiff only provides a conclusory statement that he will suffer in pain and be irreparably harmed if he is not immediately given the spinal cord stimulator, surgery, and further pain management. Plaintiff has been approved for the spinal stimulator trial; no doctor has recommended further surgery at this point; and Plaintiff is not a good candidate for treatment with opioids. As such, the court cannot conclude Plaintiff will suffer irreparable harm in the absence of injunctive relief.

Under these circumstances, the court cannot conclude that injunctive relief is in the public interest, or that the balance of equities weigh in Plaintiff's favor.

For these reasons, Plaintiff's motion for preliminary injunction should be denied.

The parties did appear before Magistrate Judge Baldwin on May 31, 2022, for an early mediation conference (EMC). Judge Baldwin and the parties agreed to continue the EMC to June 30, 2022, and a status conference was set before Judge Baldwin for June 14, 2022. It is recommended that if the parties are not successful in resolving this matter at the June 30, 2022, continued EMC, that Dr. Naughton be required to file a status update regarding Plaintiff's spinal cord stimulator trial on or before July 14, 2022.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion for preliminary injunction (ECF No. 5).

If this Report and Recommendation is adopted, Dr. Naughton should be ordered to file a status update regarding Plaintiff's spinal cord stimulator trial on or before **July 14, 2022**.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 2, 2022

_____
Craig S. Denney
United States Magistrate Judge